Good morning, and may it please the Court, Rebecca Sharpless for Petitioner Roger Alfaro. Your Honors, this case has gotten easier. The government now agrees that the Court has jurisdiction over the case, because it is not a crime involving moral turpitude. So the only remaining issue is whether a non-government trailer in a jungle constitutes a prison, such that Petitioner was confined to a prison when Nicaraguan Contras, non-governmental actors confined him in a trailer in the jungle. Under plain English, the dictionary definition, a non-governmental trailer in a jungle is not a prison. Neither the agency nor the government has cited to any authority otherwise. Well, how much deference should we give the agency as far as its interpretation of what constitutes imprisonment? Aren't we required to defer to the agency if the term is ambiguous? Your Honor, the government is not arguing for Chevron deference, and I think that's correct, because this is not a statutory interpretation issue. I would also point out to the Court that the agency never engaged with the precise issue, which is whether a trailer is a prison. It acknowledged the argument, but never gave any reasoning. So there's actually no deference to any reasoning to be had. We don't give any deference to the agency at all, even aside from Chevron deference. We don't give the agency any deference? I mean, what's the... So if Chevron doesn't apply, then the... I'm forgetting the name of the Supreme Court case that was prior to Chevron. So we can reverse then if we disagree with the agency's definition? You absolutely, and should reverse, and I urge the Court that this is a question of law. It is review de novo. Whether or not The agency said Mr. O'Farrell himself previously admitted that he was confined to a prison. And that's incorrect. If you look at the record, Your Honor, he multiple times, I'm counting five to seven times, and I elaborate them in the brief, he made the very argument that the trailer was not a prison. The trailer was not a prison. The trailer was not a prison. He said that many times. Suppose it was a concrete building. I'm sorry? Suppose it was a concrete building and not a trailer. Right. So I do think that... Would that make any difference? So I do think that there are two... Would that make a difference? I don't think it would, Your Honor. Okay. Because I think... So the fact that it's a trailer is irrelevant. Well, I think that it has to have two things. One, it has to be a building that's recognizable as a prison. So if it was a concrete prison, if you had up a flash card and a picture of it, someone would say that's a prison. That's one thing, to have a building that looks like a prison that is a prison. Number two, you need governmental authority. And we have neither in this case. We have a trailer, and we have non-governmental actors. We have neither of the indicia of a prison here in this case. With respect to jurisdiction, I urge... Is the term ambiguous or non-ambiguous? What's your position? I think it's very clear that it's not a prison. Now, if there is ambiguity, we argue that this is not a willful misrepresentation. How can it be willful if there's this amount of ambiguity? What does the word prison imply? The question is asked about being in prison, and what does that communicate? The question was very specific. Confined in a prison... I understand that, but what does the word prison mean? It means that, and the definition is that it's a building... It means you did something bad. Your Honor, I... If you ask somebody whether they've been imprisoned, it's like saying that they commit a crime. Well, Your Honor, if I could point out that... Do you agree with that? No, I disagree with that. I think that this... Well, then what does being in prison mean, imply? Well, it could imply multiple things, but... Could it imply you're just taking a vacation? No, Your Honor. Okay. I do think that there are very... When we're talking about taking away someone's permanent residency for a willful misrepresentation... And I'm talking about what does prison mean. Does it imply... Prison means a building... And he never was because he was held in a trailer by non-governmental actors, and that is not a prison. And he consistently said... Where do you go to find your definition of prison? I quote Black's Law Dictionary, and I should point out the board never points out a definition of a prison that would encompass what happened here, nor does the government. Okay. Regarding jurisdiction, I urge the court to make the specific finding that the government also now agrees with, that Florida theft is categorically not a crime involving moral turpitude. That is extremely important. There's been a lot of confusion around this issue, and I urge the court to make that finding. But if I may close by saying that the court should remand this case to correct the clear legal error and also order Mr. Alfaro returned. He has been deported for two years now. He was deported out from under a pending motion for a stay when the government asserted to the court that there was no timetable for his deportation. So I urge the court to remand this case, both because the definition of prison is clear, even if it isn't, even if there's some ambiguity. There was not a willful misrepresentation. The question is, what does it communicate to the person answering the question? The question to the person is, have you ever been imprisoned? Your Honor... I suggest, I'm not arguing with you, I just suggest that it means, have you ever been incarcerated because you committed a crime? Right, and... And of course there was a murder involved. No, there was not, Your Honor. There was a killing of a prisoner. There was a killing of a prisoner. All right, there's a homicide. Okay. A homicide. Yes. And he wouldn't want to talk about the homicide because then the immigration officer would have followed it up into some other things, I suppose. Well, Your Honor, it's important to keep in mind that, two things. First, the phrase confined to a prison comes within the larger phrase, arrested, convicted, or confined to a prison. That grouping is clear that we're talking about a government authority, someone being charged with a crime and then charged, convicted, confined in a prison. Completely outside of that is a non-governmental group that is lawlessly, falsely imprisoning someone. Yes. Did he have a trial? No. There was no trial, right? There was no charge, there was no... So, therefore, your answer was he was never convicted of a crime? Never arrested, never charged, never convicted, and never confined in a prison. Correct, Your Honor. This happened in Honduras, actually. It happened in a – I believe it was in a jungle trailer in Honduras, which is where the rebels... It's outside of Nicaragua, which was the headquarters of the insurgent group. So it's an extraterritorial case in that sense. I'm not sure it matters, but yes, Your Honor, that's right. I believe it's unclear whether because they were also operating in Nicaragua itself, the rebel group. I'm not sure whether this particular trailer – the record may not say whether this particular trailer was in Honduras in the jungle or in Nicaragua in the jungle. Your Honor. Are there no further questions? You saved a rebuttal time. Mr. Smullo. Good morning, Your Honors, and may it please the Court. Daniel Smullo on behalf of the United States Attorney General. During his immigration court testimony and in his written pleadings, the petitioner claimed repeatedly that after severing the hand of a dead Sandinista prisoner, the Contra rebel group, of which he was a member, court-martialed and put him in, quote, jail. Under the circumstances of that case, in this case, no reasonable fact finder would be compelled to conclude that Alfaro did not commit a material misrepresentation. The Contras were not the government of Nicaragua. They're an insurgent group. Yes, that's correct, Your Honor. Is that lawful authority? Your Honor, I'm not sure lawful authority is necessary under the circumstances of the question that was asked of Alfaro, but I note that the United States government actively trained and backed the Contras, and that alone lends an air of legitimacy for at least United States purposes. Where did you get that idea? What's that, Your Honor? Where did you get the idea that somehow the government supporting a group vests lawful authority on an insurgent group? Well, when we're looking to the definition of prison and assuming, and I don't think it's necessary under the facts of this case, assuming that some type of lawful authority is required, and the government does not believe it is, certainly our government supporting a group does lend it legitimacy. Well, if you're kidnapped and kept in a confined situation, would that fall in the category? Would you have to then answer yes to this question? I think probably not. It probably would not be a willful misrepresentation at that point. But here, of course, we're in a very different situation. Alfaro testified that he wore a uniform. He testified that he was fighting on behalf of an active military organization and one that the United States backed. And the answer to this question, as he's testified, given his facts, was yes. He said later he misunderstood the question when asked whether or not he was confined in a prison. But it does seem odd now. He was trained by the United States as a part of the Sandinistas to go down there and fight the Contras. Yes. And now the government is seeking to punish him for getting captured. Well, Your Honor, he was trained, certainly, as part of the Contras. But even his testimony where the Contras themselves court-martialed him because his activities were so far beyond the pale, Your Honor. I mean, it's not clear, and the court made no finding as to whether he shot that Sandinista prisoner. But it is absolutely and unequivocally clear from his testimony that he severed the hand so he could move more prisoners along. Let me pose a hypothetical to you. Let's assume Mr. Alfaro was in Liberty City and a street gang with its own code of conduct seizes him and detains him in their headquarters against his will. Would that constitute imprisonment for the purposes of Title VIII? Not for purposes of Title VIII. I think that a street gang is a bit too far away from the facts of this case. I mean, again, the question is? It's far away from being a trailer in a jungle? It is, Your Honor. Fighting the Contras? Well, you know, the United States government is presumably, in your hypothetical, not backing that street gang, Your Honor. That's one answer. And, again, we have to take the question in context. Have you ever been arrested, convicted, or confined in a prison? Confined to a prison. Excuse me, confined to a prison. I apologize, Your Honor. Is there a difference between a prison and a jail? For these purposes, there is not, Your Honor. This is not a Black Law Dictionary question. This is a form that is given. The purpose of the form, as I understand it, is to invite questions by the examining officer. Yes, it's to elicit information. If there are answers put in, then that leads to why, why, why, why, why do these things happen? That's correct, Your Honor. It's to elicit information, to find out more about the person's background, to determine whether the United States wants to admit this person into permanent residency status. He can be denied his adjustment of status if he makes a willful misrepresentation. Yes, Your Honor, that's correct. It's got to be a willful misrepresentation. Yes, and here it absolutely was, Your Honor. If I could go for a moment to the record. The immigration judge said that he misunderstood the question. I think he – my reading of the immigration judge's decision is that he may have misunderstood. Certainly, Alfaro testified to that later. But in the end, there's no question that the immigration judge upheld and found that he did make a material misrepresentation, and, in fact, the board affirmed that decision. So at the end of the day, while noting that that was Alfaro's testimony, he disbelieved it. And, again, Your Honor, the testimony in this record is absolutely unequivocal as to what Alfaro understood. Page 405, this is in reference to severing the hand at least, perhaps the murder. Page 405, quote, I did jail time for that. Page 407, I did six months in jail for that. Again, page 407, the punishment was five months in jail. Pages 450 to 451, I was confined in a, quote, trailer, and they made it like a cell. It continues in his written pleadings. Page 59 of the record, quote, they sent me back to Honduras to face a disciplined military court. They put me between 30 and 60 days inside an isolated military cell because I had cut a hand off a dead prisoner's body. Well, Your Honors, Alfaro understood that he had been confined to a prison, and there is no reasonable fact finder would be compelled to conclude to the contrary. I think it's kind of, I mean, when he moved to adjust his status in 1982, and now 40 years later he's served with a notice to appear, that's, I mean, I knew that. Yes, that's been a long time now. And now let me, if I could. After 40 years, the government deports him. After 40 years, he's been here since 1982? That seems rather. Well, let me, if I could, explain how we got here, so to speak. Mr. Alfaro committed some crimes in Florida, some of which he was convicted. We agree they're not crimes involving moral turpitude, but those repeated convictions were what. Well, you've withdrawn your. Yes, absolutely. Petit theft in Manatee County. That's correct, but it's those convictions and those arrests in Florida, the state crimes that brought him to the attention of immigration. Because he withheld a true identity, is that how it happened? I'm sorry, I don't quite understand. He misrepresented his identity, did he not? He did not misrepresent his identity. I thought to the officers he did. I don't believe so, Your Honor. He misrepresented that he had been confined in a prison. No, I'm not talking about that. I'm talking about when he was arrested. Pardon me, yes, you're quite right. When he was arrested, the most recent thing that led to his proceedings, he was arrested and he gave a false name. That is correct, Your Honor. I apologize. So they investigated to find out who he was. Yes. And that's what led to the immigration authorities filing the notice of appear. I believe that's correct, Your Honor. The issue of law is the meaning of the word prison, is it not? I respect that. I believe it's an issue of fact as to whether he made a material misrepresentation on this immigration. But don't we have to understand what he was asked? That is, was he confined to a prison? So does the case turn on what the word prison means, what the objective definition of that word is? I don't think it's an objective test, Your Honor, but even if it were an objective test, the government still wins. And here's why. This is a form, and on the form itself it says signature of the preparer if there were one. This is a form that's given to everybody. You need not hire an attorney. You need not, you know, it's meant to be, as the word is commonly understood, in prison, particularly in light of the question that's asked, whether you've been arrested, convicted, or confined in a prison. To a prison, which makes a difference. I've made the mistake again, and I apologize, Your Honor. Well, the words running together, arrested, convicted, or confined to a prison, the word is, you know, you define the word by the company that it keeps. It means some governmental authority has arrested you and put you away somewhere. Yeah, and I think that's what you need to define prison. Well, he was certainly put away somewhere. I mean, he was put away in a trailer in his testimony when asked, well, what happens if you are to leave the country? So what is a prison? A prison is a place where anybody keeps you. It would be akin to restraining someone's freedom. Or does it need some lawful authority that puts the imprimato on that detention? Here we have the lawful authority, Your Honor. And if the answer, in fact, is, well, you know what, being a country, even though the United States backed this group, it was not a prison, then by answering the question yes, he's still admissible, and there's no harm, so to speak. The purpose of this forum is to elicit information and to find out about the individual's background. So immigration authorities can determine whether the person is admissible to the United States and whether the person, as a matter of discretion, ought to be awarded the privilege of lawful permanent residence in this country. And to come in and testify repeatedly that I was confined in a jail because I was court-martialed by a group and then say no, that I had not been confined to a prison, is a willful and material misrepresentation. Now, you've changed this forum since then, is that right? Is this forum still in effect? The forum has changed several times, Your Honor. And it's gotten lengthier. Have you provided a definition of prison anywhere? I believe that jail is now included, and it's more fulsome. I apologize, I don't have quite the forum as it now reads. I will say, if I could speak outside the record for a moment, I think the forum is getting more fulsome in part to eliminate litigation such as what we're undergoing now. But in any event, be that as it may, in 1982, the question under Alfaro's circumstances, the answer to this question was yes. I'm still a little confused. Are we bound by the government's definition of what constitutes a prison or not? Well, the term was not defined on the forum, and it need not be. It was the understanding of what a prison was. What happens if we disagree with the government's definition of what constitutes a prison? Then we would reverse the agency's decision, right? Yes, that is correct. But again, I would argue that some deference would be called for here. Again, really what we're looking for is- We would defer only if the agency's definition is reasonable. Yes. I know we don't apply Chevron deference, but using that same analysis, we should give some deference to the agency. But if the agency's definition is not reasonable, we don't have to defer to it, do we? Yes, that's correct. But here, of course, it was reasonable. He was confined, again, in a trailer. He testified he would have been shot had he sought to leave, and he was confined because of the atrocities that he committed against the Sandinista. So even if one were to get to the legal definition of prison, the government's interpretation here was reasonable. But again, Your Honor, it is the government's position that this is a substantial evidence question. This is a factual question of did Alfaro commit a material misrepresentation when he checked the no box on that form. And no reasonable fact finder, under the facts of this case, would be compelled to conclude that he did not commit a material misrepresentation. He knew exactly what this was. Again, I need not go through the transcript and testimony again. He repeatedly called it a jail. He did so because he was confined. And indeed, the immigration judge notes that he was even arrested by the Contras. And for these reasons, no reasonable fact finder would be compelled to conclude that he did not lie on that form. If there are no further questions, Your Honors, I will submit it on the government's brief and ask the courts to deny the petition. Thank you, Your Honors. So the immigration judge here specifically found, and this is on page 7 of my brief, that Mr. Alfaro, quote, misunderstood question 17, as he believed that being confined in a trailer in the jungle under some kind of military investigation was not a prison. It's clear throughout the record that Mr. Alfaro was arguing, even though he was sometimes using the word jail to describe the experience of being confined by the Contras, that's how it felt to him. It's clear that he was pressing this distinction, and the judge even accepted that he was pressing this, was confused that there's this distinction. So even if I'm wrong that it's not clear that a Contra trailer in the jungle is not a prison, there's sufficient ambiguity and a factual finding by the immigration judge showing that there was no willful misrepresentation in this case. He never said he was court-martialed. That's totally incorrect. Mr. Alfaro never said he was court-martialed. In fact, when the immigration attorney asked, did you ever have a proceeding like being in court now before the Contras that resulted in your being imprisoned, i.e. a court-martial, he said no, and he said multiple times to the court and to the immigration attorney that there was this confusion. He was never imprisoned. He was never in a prison. He was only confined by the Contras. I should also mention, Your Honors, that at the time, in early 1980, there was no terrorism bar, and it is true that the form has now been revamped, but the proper place to look for whether this was a material misrepresentation was the form at the time. Is this, again, in looking at the word prison, is this an objective test? That is, what is the ordinary meaning of the word prison? Correct, Your Honor. What was inside his head when he looked at this particular question? The government seems to think you go inside his head and you figure this out, and it's a question of fact. Alternatively, is it a question of law of what the word prison means and what is the ordinary meaning, and we would use the tools that ordinarily the court would have to try to understand that meaning? Which way do you go? I think that it is a question of law, that whether facts fit a definition is a standard question of law. However, I think that he prevails on both counts. Willfulness would go to the facts. Prison would go to the law. I believe, though, if this is a question of fact about what was in his mind when he answered that, as I think many other people would if they were to be asked the same question, subjectively the immigration judge recognized that he understood that question to be asking about a real prison, not a fake trailer prison by nongovernmental authorities. That was recognized. So I think the record even contradicts the government's position in this case. If there's nothing further, I ask the court to remand the case to the BIA. Thank you. United States v. Vico.